**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DONALD E. BOYD, Plaintiff, | Hon. Faith S. Hochberg, U.S.D.J. |
| v. | Civil Case No. 07-769 (FSH) (PS) |
| BERGEN COUNTY JAIL, *et al.*, Defendants. | **OPINION** |
| | Date: September 4, 2012 |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendants' motions for summary judgment pursuant to Fed. R. Civ. P. 56. The Court has reviewed the submissions of the parties and considered the motions on the papers pursuant to Fed. R. Civ. P. 78.

## I. BACKGROUND[1]

This case arises out of Plaintiff's alleged mistreatment at the Bergen County Jail while he appeared for hearings and a trial in his prior state criminal case. Specifically, Plaintiff complains that he was beaten by prison guards, that he was placed in restraints until he agreed to provide a blood sample, that he was denied his medications, and that he was prescribed Xanax without giving his informed consent. He has asserted federal constitutional claims under 42 U.S.C. § 1983, state constitutional claims, and state common law claims of conspiracy, intentional infliction of emotional distress, and medical malpractice.

[1] For purposes of the motions for summary judgment, all disputed facts are viewed in a light most favorable to the non-movant.

**A) The 2005 Incident**

On February 14, 2005, Plaintiff was transported from Hudson County Jail to the Bergen County Jail. During his intake, he was accompanied by Defendant Officers Michael Russo, Brian Pell, and Chris Sloma (who were supervised by Defendant Paul Acakios). An altercation occurred during intake. Defendants contend Plaintiff was uncooperative and became agitated (County Defs.' 56.1 Stmt. ¶ 7); Plaintiff contends that Defendants Russo, Sloma, and Pell attacked him in retaliation for arguing with the judge in his earlier hearing after he refused to remove the suit that he said he needed for court (Pltf.'s Opp. to County Defs.' 56.1 Stmt. ¶ 7). During the altercation, Defendant Russo was exposed Plaintiff's blood. (County Defs.' 56.1 Stmt. ¶ 8.)

After the altercation, Plaintiff was transported to the Center for Occupational Medicine, where he was seen by Defendant Nurse Dolores Guida. (*Id.* ¶ 9.) Her contemporaneous notes reflect that he had an abrasion to his right hand and complained of pain in his left elbow and thumb, as well as two "small bumps" above his right eyebrow. (*Id.*) They also indicate Plaintiff refused ice and Tylenol. (*Id.*) Plaintiff contends he had injuries to his nose, ribs, hands, and head, and that Nurse Guida refused to provide treatment. (Pltf.'s Opp. to County Defs.' 56.1 Stmt. ¶ 14.) Her dictated note indicated that he had been "acting very strangely," which Plaintiff denies, so he was placed in a "blue suicide gown," taken to special housing, and "restrained." (County Defs.' 56.1 Stmt.¶ 12.) Notes also indicated that Nurse Guida spoke to Plaintiff about providing a blood sample for testing in light of Defendant Russo's exposure (*id.* ¶ 13), and that he was placed in restraints (*id.* ¶ 14).

In transcript of the state court hearing the next day, February 15, Plaintiff's attorney stated on the record that he did not believe Plaintiff could proceed at the hearing because his

right eye was nearly swollen shut, he had "severe abrasions," and that Plaintiff had reported to his attorney that he did not sleep the prior night because he had been kept handcuffed, "naked, shackled to a bed." (*Id.*) His attorney also reported he "looks beat up" and "like a prizefighter," (*id.*), and that his hand was "pretty significantly swollen." (Pltf.'s 56.1 Stmt. Opp. County Defs.' MSJ ¶ 15.) Plaintiff then told the judge that he had at least "a bad sprain" of his hand, that he had been shackled, and that he had been denied his blood pressure medication. (Pltf.'s Opp. to County Defs.' 56.1 Stmt. ¶ 14.)[2]

On February 17, 2005, Plaintiff's blood was taken by a third party technician for testing; no defendant was present. (County Defs.' 56.1 Stmt. ¶ 15.) Plaintiff contends that he only provided his consent for the blood to be taken after having been kept in four-point restraints for three days by the Defendants Russo, Sloma, and Pell under orders from Defendant Acakios. (Pltf.'s 56.1 Stmt. Opp. County's MSJ ¶¶ 12, 27-28.) Plaintiff contends he never received an X-ray of his injured right hand, that during his restraint he was deprived of his pain medication and his blood pressure medicine, and that his blood pressure was not monitored. (*Id.* ¶¶ 19-24).

At some point, Plaintiff was apparently transported away from Bergen County Jail.

**B) The 2006 Incident**

On April 24, 2006, over one year later, Plaintiff was transferred from South Woods State Prison, where he had been incarcerated, back to Bergen County Jail to stand trial. (Pltf's 56.1 Stmt. in Support of MSJ ¶ 1). At South Woods, he had been prescribed four medications: Clonidine for high blood pressure, Ultram and Feldene for pain and arthritis, and Zantac for acid reflux. (*Id.* ¶ 2.) He had also been prescribed docusate sodium, a laxative. (County Defs.' 56.1

---

[2] Plaintiff had previously injured his right hand. After the 2005 incident, the Bergen County Jail x-rayed Plaintiff's left hand, but Plaintiff contends he complained about injuries to his right hand, and he later had surgery on the right hand. (*See* County Defs.' Br. in Support of MSJ at 10; Pltf.'s Br. Opp. County Defs.' MSJ at 4-5.)

Stmt. ¶ 23.) The Ultram, Feldene, and docusate sodium were prescribed to be taken as needed, and Plaintiff apparently only took the Zantac as needed as well. (*Id.* ¶ 24; Pltf.'s Opp. to County Defs.' 56.1 Stmt. ¶ 24.)

Plaintiff contends that despite his repeated requests, he was not provided his medications that day. (Pltf.'s 56.1 Stmt. Opp. County Defs.' MSJ ¶ 37). Plaintiff began to make a disturbance around 11:30 that night, demanding his medication. (*Id.*) He contends that Defendants Officers Michael LaPlaca, Miguel Bracero, and Lawrence Dixon then entered the cell, punched and kicked him, and placed him in a different cell. (*Id.* ¶¶ 40-41.)

On April 25, the next morning, Plaintiff, who was acting as his own counsel, was taken for trial before Judge Conte. (*Id.* ¶ 43.) He informed the court of the incident, and said that he had not received his medications or been seen by the medical staff. (*Id.* ¶ 44.) Judge Conte then ordered that Bergen County Jail provide Plaintiff with his medications. (*Id.* ¶ 35.) Defendant Dr. Jon Hershkowitz, the jail medical director at the time, prescribed one dose of Ultram, Clonidine, and Flexeril[3]; Defendant Nurse Patricia Panzer then brought those doses to Plaintiff at the courthouse. (Pltf's 56.1 Stmt. in Support of MSJ ¶¶ 8,9.)

On April 27, 2006, Plaintiff again informed the court that he had not received his medications, and the court again ordered the Bergen County Jail to provide them. (*Id.* ¶¶ 11, 12.) Plaintiff also reported to the court that he was shaking. (Hershkowitz 56.1 Stmt. in Support of MSJ ¶ 26.) A nurse subsequently reported to Dr. Hershkowitz that Plaintiff was experiencing "anxiety" during the trial, and that Dr. Hershkowitz needed to prescribe "something." (Pltf's 56.1 Stmt. in Support of MSJ ¶ 13.) Dr. Hershkowitz accordingly wrote prescriptions for Xanax, a psychotropic medicine, as well as the Ultram Plaintiff had previously been prescribed. (*Id.* ¶

[3] Plaintiff had not previously been prescribed Flexeril, a muscle relaxant, and he did not receive it again. (Boyd Affirm Statement in Support of Boyds MSJ ¶¶ 2, 16.)

15.) Plaintiff had never before taken any psychotropic medication. (Pltf.'s 56.1 Stmt. Opp. County Defs.' MSJ ¶ 36). Defendant Nurse Joanne Parker delivered the medications to the courthouse, and the transcript reflects that she indicated she was providing Plaintiff with Xanax and Ultram. (Hershkowitz 56.1 Stmt. in Support of MSJ ¶ 29.) Plaintiff soon reported that "it's amazing what one little pill will do to make somebody feel a little bit better. . . . I'm definitely feeling a little better and a little bit level headed and a little bit more clear. It did kick in. Just on the record. . . . It's amazing. . . . I don't have the shakes anymore. They're gone. . . . I feel a lot easier." (*Id.* ¶ 31.)

Dr. Hershkowitz never spoke to Plaintiff before prescribing the Xanax, and therefore did not describe the effects or other pertinent information about that medication. (Plaintiff's 56.1 Stmt. Opp. Hershkowitz MSJ ¶ 20.) Dr. Hershkowitz believed the nurse administering the medication would provide those explanations (Hershkowitz 56.1 Stmt. Opp. Boyd MSJ ¶ 13), and several nurses agreed that this is standard procedure (*Id.* ¶¶ 20-21, 24). Nurse Parker recalls being told by the guards not to speak to the inmate when she administered the medication. (*Id.* ¶ 23.) Although the trial transcript does not contain any other complaint by Plaintiff concerning his medication, (Hershkowitz 56.1 Stmt. in Support of MSJ ¶ 33), Plaintiff now contends that he was affected adversely by the drugs, and Plaintiff's expert will testify that the interaction of Xanax with the Ultram and Clonidine could cause fatigue and a subjective sense of being drunk (Plaintiff's 56.1 Stmt. Opp. Hershkowitz MSJ ¶ 25.)

On May 2, 2006, during his closing statement at trial, Plaintiff attempted to cut his wrists, which Plaintiff contends was a suicide attempt. (Plaintiff's Opp. to Hershkowitz 56.1 Stmt. ¶ 37.) He was then evaluated for the first time by Defendant Dr. Samuel Sostre, the prison psychiatrist. (Plaintiff's 56.1 Stmt. Opp. County Defs.' MSJ ¶ 59.)

**C) Procedural History**

Plaintiff initially filed this suit *pro se* on February 13, 2007. Claims against certain defendants were dismissed on June 7, 2007, and on September 22, 2009 Plaintiff filed his amended complaint. On December 9, 2009, Plaintiff filed a second amended complaint, the operative complaint. Defendant Dr. Hershkowitz has moved for summary judgment on all claims. Plaintiff moves for partial summary judgment against Dr. Hershkowitz that his constitutional right to informed consent was violated when Xanax was administered. The remaining defendants (the "County Defendants") all move for summary judgment on all claims.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. DISCUSSION

### A) Application of the Eighth and Fourteenth Amendments

The parties disagree whether the Eighth or Fourteenth Amendment applies to Plaintiff's claims for failure to provide proper medical care. (*See* County Defs.' Br. in Support MSJ at 25-26; Pltf.'s Br. Opp. County Defs.' MSJ at 22-23.) Generally, pre-trial detainees are protected by the Fourteenth Amendment, because the state has not yet "acquired the power to punish with which the Eighth Amendment is concerned." *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40

(1977); *see generally Sylvester v. City of Newark*, 120 F. App'x 419, 423 (3d Cir. 2005). As Plaintiff explains, whichever amendment applies, courts typically apply the Eighth Amendment framework supplied by *Estelle v. Gamble*, 429 U.S. 97 (1976), to claims asserting failure to provide medical care. However, the Supreme Court has held that the Fourteenth Amendment protections are "at least as great as Eighth Amendment protections available to a convicted prisoner," *City of Revere v. Massachusetts Gen. Hospital*, 463 U.S. 239, 244 (1983), and some courts have held that the Fourteenth Amendment provides greater protection pre-sentencing detainees, *see Lewis v. Downey*, 581 F.3d 467 (7th Cir. 2009).

In this case, there is no question that Plaintiff had not been convicted in 2005 and had been convicted in 2006. (*See* Pltf.'s Br. Opp. County Defs.' MSJ at 22-23.) Although Plaintiff was in the Bergen County Jail awaiting trial in 2006, he was subject to incarceration because of a prior conviction; the state had thus "acquired the power to punish." *Ingraham*, 430 U.S. at 671-72 & n.40. The Court finds that the Fourteenth Amendment therefore governs Plaintiff's claims pertaining to the 2005 incident, when Plaintiff was a pre-trial detainee and had not yet been convicted of a crime, and the Eighth Amendment governs the 2006 incident, when Plaintiff had been convicted.

**B) Hershkowitz and Boyd Motions for Summary Judgment**

Plaintiff asserts the following claims against Dr. Hershkowitz: (1) § 1983 action for failure to provide medication, (2) § 1983 action for administering Xanax without Plaintiff's informed consent, (3) common law conspiracy claims for conspiring to deprive him of his constitutional rights, (4) intentional infliction of emotional distress, (5) state constitutional claims

for failure to provide medication and administering Xanax without Plaintiff's informed consent,[4] (6) medical malpractice. Dr. Hershkowitz moves for summary judgment as to all claims. Plaintiff Boyd moves for partial summary judgment on the § 1983 claim against Dr. Hershkowitz for administration of Xanax without Plaintiff's informed consent.

**1) § 1983 and NJCRA Claims for Failure to Provide Medication**

In order to recover under § 1983 for violation of Eighth Amendment rights, Plaintiff must show that the Defendant was deliberately indifferent to Plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *see also Spruill v. Gillis*, 372 F.3d 218, 235-36 (3d Cir. 2004) (same). The test is not objective; Plaintiff must show Defendant knew he was putting Plaintiff's health at significant risk and ignored that risk. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). The jury may find deliberate indifference in an Eighth Amendment case where defendants "intentionally deny[ ] or delay [ ] access to medical care or intentionally interfere[ ] with the treatment once prescribed." *Hankey v. Wexford Health Sources, Inc.*, 383 F. App'x 165, 168 (3d Cir. 2010) (quoting *Estelle*, 429 U.S. at 104-05). "[W]hether or not a defendant's conduct amounts to deliberate indifference has been described as a classic issue for the fact finder." *Goodrich v. Clinton County Prison*, 214 F. App'x 105, 111 (3d Cir. 2007) (quoting *A.M. ex. rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.*, 372 F.3d 572, 588 (3d Cir. 2004)). On the other hand, the party opposing summary judgment must point to facts from which a reasonable fact finder could conclude that the defendant knew and intentionally disregarded an

[4] Plaintiff's state constitutional claims depend on the same standards as his federal law claims. *See Chapman v. New Jersey*, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009) (New Jersey Civil Rights Act construed "in terms nearly identical to its federal counterpart," § 1983); *Jumpp v. Power*, 2009 WL 1704307, at *4 (D.N.J. June 18, 2009) (Eighth Amendment and New Jersey constitution provide "congruent relief in the deliberate indifference context."); *Filgueras v. Newark Public Schools*, 45 A.3d 986, 997 (App. Div. 2012) (elements of due process claim under state law and § 1983 are the same). The Court will therefore consider the state and federal constitutional claims together.

excessive risk to the inmate's health. *See, e.g.*, *Farmer*, 511 U.S. at 838 (The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

It is undisputed that Plaintiff had a serious medical need, which is one that "has been diagnosed by a physician as requiring treatment." *Christy v. Robinson*, 216 F. Supp. 2d 398, 413 (D.N.J. 2002). Here, he had been diagnosed with hypertension, arthritis, and chronic pain, and received medications for those ailments. (Pltf's 56.1 Stmt. in Support of MSJ ¶¶ 8,9.)

Dr. Hershkowitz contends that his actions do not demonstrate deliberate indifference because he in fact prescribed the medications Plaintiff required. (Hershkowitz Moving Br. at 13.) He notes that courts generally do not find deliberate indifference when some level of medical care has been offered to an inmate. *See Christy*, 216 F. Supp. 2d at 413-14.

Plaintiff responds that in this case, Dr. Hershkowitz failed to provide medical care. Plaintiff points to the fact that the trial court twice had to order the Bergen County Jail officials to provide medication, and that Dr. Hershkowitz twice wrote single prescriptions for only some of Plaintiff's medication. Additionally, Dr. Hershkowitz substituted Flexeril (cyclobenzaprine, a muscle relaxant) for the Feldene (Piroxicam, an anti-inflammatory) Plaintiff had been prescribed previously. (Plaintiff's 56.1 Stmt. Opp. Hershkowitz MSJ ¶¶ 15, 16.) Plaintiff also contends that Dr. Hershkowitz did not prescribe additional doses of Clonidine, the blood pressure medication, but the facts demonstrate that Plaintiff continued to receive that medication. (*Id.* ¶ 17.)

Here, Plaintiff has failed to adduce any evidence from which a jury could conclude that Dr. Hershkowitz deliberately delayed or denied access to medical care, or was aware of a risk and failed to act. *Cf. Estelle*, 429 U.S. at 104-05. To the contrary, the undisputed facts

demonstrate that each time Dr. Hershkowitz became aware that Plaintiff had not received his medication, Dr. Hershkowitz wrote prescriptions and dispatched a nurse to the courthouse to provide Plaintiff his medications. (Pltf's 56.1 Stmt. in Support of MSJ ¶¶ 8-12.) This Court must be deferential to the decisions made by prison medical staff, and will not engage in "second guessing" the adequacy of Plaintiff's care. *See generally Christy*, 216 F. Supp. 2d at 413. Moreover, "[c]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Clark v. Doe,* No. 99–5616, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000); *see also Christy*, 216 F. Supp. 2d at 413-14.

Because Plaintiff did receive medical care, and because Plaintiff cannot show that Dr. Hershkowitz acted with deliberate indifference in delaying his access to medical care, the Court will grant Dr. Hershkowitz's motion for summary judgment as to the federal and state constitutional claims concerning the alleged delay in providing medication.

**2) § 1983 and NJCRA Claims for Administering Xanax without Plaintiff's Informed Consent**

"Convicted prisoners, like involuntarily committed mental patients, retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives." *White*, 897 F.2d at 113 (3d Cir. 1990). "Informed consent is a necessary precursor to a patient's Constitutional right to refuse treatment since a prisoner's right to refuse treatment is useless without knowledge of the proposed treatment." *Id.* However, mere negligence does not suffice to demonstrate a constitutional violation, and "the judgment of prison authorities will be presumed valid unless it is shown to be such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." *Id.*

"To establish a violation of this right, a prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment." *Mudey v. United States*, No. 09-1699, 2011 WL 1884796, at *4 (D.N.J. May 18, 2011) (quoting *Pabon v. Wright*, 459 F.3d 241, 246 (2d Cir. 2006)).

In *White*, the Third Circuit reversed the dismissal of a complaint that alleged that a prison doctor refused to answer an inmate's question as to whether a drug prescribed contained an ingredient to which the inmate was allergic. *Id.* Moreover, the court noted that, at the motion to dismiss stage, it had to accept as true the allegation that the prison doctor was merely acting "sadistically," with no legitimate purpose for refusing to inform the inmate about the ingredients in the medication. *Id.* at 114.

Dr. Hershkowitz contends he is entitled to summary judgment because his decision to administer Xanax was reasonable exercise of his professional judgment under the circumstances. Plaintiff moves for summary judgment n this count because it is undisputed that Dr. Hershkowitz did not evaluate, speak to, or communicate with Plaintiff before the Xanax was administered.[5]

The undisputed facts demonstrate that Plaintiff described himself as shaking during court, and that he stated that he needed medication. (Hershkowitz 56.1 Stmt. in Support of MSJ ¶ 26.) That information was conveyed to Dr. Hershkowitz as a need for medication to control Plaintiff's anxiety (Pltf's 56.1 Stmt. in Support of MSJ ¶ 13), and Dr. Hershkowitz's professional judgment was that he needed to provide the medication to calm Plaintiff (Hershkowitz 56.1 Stmt. in Support of MSJ ¶ 26). Moreover, Dr. Hershkowitz has also indicated that he believed the

5 Plaintiff frames his motion as a claim under the Fourteenth Amendment. However, as the Court has explained, the Eighth Amendment controls Plaintiff's claims here.

nursing staff would communicate with Plaintiff about the medication, and there was no way for him to communicate directly with Plaintiff at the time because Plaintiff was in the courthouse. (Hershkowitz 56.1 Stmt. Opp. Boyd MSJ ¶ 13.) The testimony of the nursing staff that they typically communicated with the inmates about the risk of the drugs demonstrates that Dr. Hershkowitz's assumptions were reasonable. (*Id.* ¶¶ 20-21, 24.)

Unlike the conduct alleged in *White*, here there is not a scintilla of evidence indicating Dr. Hershkowitz acted with intent to harm Plaintiff or was deliberately indifferent to the Plaintiff's health. To the contrary, the facts demonstrate Dr. Hershkowitz provided medication in response to the Plaintiff's symptoms, and that Plaintiff's response to that treatment was to tell the Court how helpful the treatment had been. (Dr. Hershkowitz's Statement of Facts ¶ 31 ("Now I'm definitely feeling a little better and a little bit level headed and a little bit more clear. It did kick in. Just on the record. . . . It's amazing. . . . I don't have the shakes anymore. They're gone. . . . I feel a lot easier.").)

The Court's review of Dr. Hershkowitz's decision is limited. *White*, 897 F.2d at 112. On these facts, Plaintiff cannot show that Dr. Hershkowitz's decision was "such a substantial departure from professional judgment, practice or standards as to demonstrate that the doctor did not base the decision on such a judgment." *Id.* at 113. Moreover, there is no indication of deliberate indifference. *See Mudey*, 2011 WL 1884796, at *4; *see generally Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999) (explaining that the standard for a due process violation where a party cannot exercise the right to informed consent is that it "shocks the conscience"). In his brief for partial summary judgment on this claim, Plaintiff contends there was deliberate indifference because Dr. Hershkowitz "failed to take any reasonable steps at all to provide information to Mr. Boyd about Xanax." (Boyd Moving Br. at 13.) However, among

other things, the facts demonstrate that Dr. Hershkowitz believed that the nurse was communicating the drug and its attendant risks to Plaintiff. (Hershkowitz Reply 56.1 Stmt. ¶ 13) Dr. Hershkowitz has introduced testimony of nurses that this reliance comported with jail policy. (*Id.* ¶¶ 17, 20, 21.) In addition, the facts indicate that Dr. Hershkowitz understood that Plaintiff needed medication for anxiety in order to conduct the ongoing trial. (*Id.* ¶ 11). Dr. Hershkowitz also apparently scheduled an appointment with Plaintiff to discuss the drug by instructing the nurse to have Plaintiff appear for "Sick Call." (*Id.* ¶ 12.) In short, Dr. Hershkowitz did take steps to provide information to Plaintiff about the medication. Because Plaintiff cannot show that Dr. Hershkowitz acted deliberate indifference, the Court will grant Dr. Hershkowitz's motion as to these constitutional claims and deny Plaintiff's motion.

**3) Common Law Conspiracy**

The elements of a civil conspiracy under New Jersey law are "two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Mercedes-Benz USA, LLC v. ATX Group, Inc.*, 2010 WL 3283544, at *12 (D.N.J. 2010) (quoting *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177, 876 A.2d 253 (2005)). "It is well known the nature of a conspiracy is such that more often than not, the only type of evidence available to prove the conspiracy is circumstantial evidence. . . [which] will suffice." *Bd. of Educ., Asbury Park v. Hoek*, 38 N.J. 213, 239 (1962) (holding that the close association and frequent communication between the major players and the pattern of conduct among all of them gave rise to an inference of conspiracy). "While circumstantial evidence may be sufficient to prove an agreement, pure speculation is not." *Diaz v. Johnson Matthey*, 869 F. Supp. 1155, 1168 (D.N.J. 1994). "To demonstrate a conspiracy under

Section 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of state law.'" *Green v. City of Paterson*, 971 F.Supp. 891, 908 (D.N.J. 1997) (quoting *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993).

Here, Plaintiff merely points to the fact that Dr. Hershkowitz regularly communicated with the prison guards and the nurses whom Plaintiff also implicates in his claims. (See Opp. Br. at 16-17.) It seems that the conspiracy claims only arise out of the prescription of Xanax. (*Id.*) Defendant contends "there is no 'factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.'" *Anderson v. County of Salem*, 2010 WL 3081070, at *8-9 (D.N.J. 2010).

Dr. Hershkowitz contends there is no factual basis to find a conspiracy. Moreover, because the Court has granted Dr. Hershkowitz's motion for summary judgment on the constitutional claims, Plaintiff cannot sustain a conspiracy claim predicated on those alleged constitutional violations. Plaintiff's medical malpractice claim concerning lack of informed consent is one for negligence. (Opp. Br. at 22 (citing *Ramirez v. U.S.*, 998 F. Supp. 425, 435 (D.N.J. 1998).) There can be no conspiracy to commit an unintentional tort. *Lewis v. Airco*, No. L-10503-02, 2011 WL 2731880, at *33 (N.J. Super. Ct. App. Div. July 15, 2011) (noting that the New Jersey Supreme Court has not decided the issue but following the majority of jurisdictions and "requir[ing] the underlying tort in a civil conspiracy claim to be intentional").

**4) Intentional Infliction of Emotional Distress**

"[I]n order to prevail on[a] common law claim [for intentional infliction of emotional distress], 'the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Krishanthi v. Rajaratnam*, 2010 WL 3429529, at *

15 (D.N.J.2010) (quoting *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 587 (2009)). Plaintiff must show that the "conduct exceeded all bounds usually tolerated by decent society and [that] the actions are especially calculated to cause and do cause mental distress of a very serious kind." *Porta v. Rollins Environmental Services (NJ), Inc.*, 654 F. Supp. 1275, 1285 (D.N.J.1987).

Dr. Hershkowitz contends Plaintiff has shown no evidence that his conduct was "outrageous," that he acted intentionally to cause distress, or that Plaintiff has suffered severe emotional distress. (Hershkowitz Moving Br. at 20-22.) Plaintiff responds that he has experienced mental distress since the incidents surrounding his trial, and that as a result he has difficulty sleeping and has fears about taking medications. (County Defs.' Ex. L at 117:2-3, 119;12-13.) He also contends that it is unreasonable to expect him to seek mental health treatment from prison health professionals in light of "the abominable treatment" he allegedly received that is the basis of this case. (Opp. Br. at 19-20.)

The undisputed facts show that Dr. Hershkowitz responded to what he understood to be a need for medication to control anxiety during the trial. (Pltf's 56.1 Stmt. in Support of MSJ ¶ 13.) Moreover, Plaintiff reported that the medication was helpful (Hershkowitz 56.1 Stmt. in Support of MSJ ¶ 31), and the transcript reflected no further comments from Plaintiff concerning the medication. Moreover, as the Court explained, every time Dr. Hershkowitz was informed that Plaintiff needed medication, he wrote a prescription and directed the medication be taken to Plaintiff. (*See* Section III.B.1, *supra*.) Plaintiff therefore cannot show that Dr. Hershkowitz acted with intent to cause Plaintiff distress, or that his conduct "exceeded all bounds usually tolerated by a decent society. . . ." *Porta*, 654 F. Supp. at 1285; *see also Green v. City of Paterson*, 971 F. Supp. 891 (D.N.J. 1997) (collecting examples of outrageous conduct, such as falsely telling plaintiffs that their child was suffering from cancer, or bringing a mob to plaintiffs

door with a threat to lynch him if he did not leave town). The Court will grant Dr. Hershkowitz's motion on this count.

**5) Medical Malpractice**

The elements of a negligence claim are: (1) a duty of care; (2) a breach of that duty; (3) proximate cause; and (4) actual damages suffered by the plaintiff. *Ramirez v. United States*, 998 F. Supp. 425, 435 (D.N.J. 1998). Plaintiff contends that Defendant had a duty to seek his informed consent before he was provided Xanax. *See Carr v. Brezel*, 2006 WL 657380 (N.J. App. Div. March 16, 2006) ("The doctrine of informed consent . . . is based on a physician's duty to provide patients with sufficient information to enable them to 'evaluate knowledgeably' the available options and their respective risks before submitting to a particular procedure or course of treatment. . . Informed consent, as outlined above, deals with a *physician's* failure to adequately disclose material information to a patient.").

Plaintiff contends that he was unable to properly defend himself due to taking the Xanax beginning on the second day of his trial, April 27, 2006. Plaintiff's expert will testify that the combination of drugs likely impacted his ability to represent himself. (Opp. Br. at 23.) He will also testify that Dr. Hershkowitz had a duty to obtain informed consent, that the facts indicate a "gross violation of the doctor's basic duty to patient," and that the fact Plaintiff was in court at the time is "an inadequate explanation for a clear breach of duty." (Moench Decl. Ex. E at 5-7.) Dr. Hershkowitz contends that there are no damages and that Dr. Hershkowitz violated no duty.

Here, there are disputed issues of material fact. Accordingly, Dr. Hershkowitz's motion for summary judgment on this claim is denied.

**C) County Defendants' Motion for Summary Judgment**

Plaintiff asserts claims against three groups of Defendants: (1) Dr. Samuel Sostre, the supervising psychiatrist at Bergen County Jail at the time of the 2006 incidents; (2) Nurses Guida, Panzer, and Parker; and (3) guards involved in both the 2005 and 2006 incidents.

**1) Dr. Samuel Sostre**

Plaintiff asserts the following claims against Dr. Sostre: (1) a § 1983 actions concerning the failure to provide Plaintiff's prescriptions; (2) a § 1983 action alleging Xanax was administered without Plaintiff's informed consent; (3) common law conspiracy to deprive Plaintiff of his constitutional rights; (4) intentional infliction of emotional distress; (5) violations of the New Jersey state constitution; and (6) medical malpractice.

Plaintiff contends that Dr. Sostre failed to oversee and administer his Xanax prescription, failed to evaluate Plaintiff until after his suicide attempt, and did not receive Plaintiff's informed consent when he continued Plaintiff's Xanax prescription (which Dr. Hershkowitz had initiated).

It is undisputed that Dr. Sostre neither ordered nor administered Xanax to Plaintiff. (County Defs.' 56.1 Stmt. ¶ 36; Pltf.'s Opp. 56.1 Stmt. ¶ 36.) Plaintiff's claims against Dr. Sostre rest primarily on his allegation that "all psychotropic medications are to be administered and overseen by the jail psychiatrists, namely Dr. Sostre." (Plaintiff's Br. Opp. County Defs.' MSJ at 18.) However, the policy actually states that "[p]sychotropic medications will be prescribed for clinical symptoms as indicated by the psychiatrist," (Moench Decl. Ex. L at 105), but nowhere states that other licensed physicians may not supply psychotropic medications. Nowhere does the policy indicate that Dr. Hershkowitz, a licensed physician, could not prescribe psychotropic medication, or that Dr. Sostre was required to supervise the other licensed medical staff. Indeed, there are no facts indicating that Dr. Sostre was even aware that Plaintiff was

prescribed Xanax before he saw Plaintiff in the clinic. Plaintiff adduces no evidence to indicate that Dr. Sostre was required to supervise or control the actions of other medical staff who provided psychotropic medication, and Dr. Sostre had no role in prescribing or administering the drugs here. Plaintiff's only complaint concerning Dr. Sostre is that he only saw Dr. Sostre after attempting to commit suicide, but, again, there are no facts adduced that Dr. Sostre was or should have been aware of Plaintiff's mental condition prior to that incident and Plaintiff's transfer to the mental health unit.

As the Court has explained, Plaintiff must demonstrate that Dr. Sostre acted with "deliberate indifference" to prevail on constitutional claims arising from Plaintiff's medical treatment. *Farmer*, 511 U.S. at 838. The test for deliberate indifference is subjective; Plaintiff must adduce evidence that the defendant knew of the medical risk and ignored it. *Id.* Because Plaintiff has adduced no evidence that Dr. Sostre was aware of Plaintiff's mental health before the suicide attempt, he cannot show that Dr. Sostre acted with deliberate indifference.

Further, while Plaintiff alleges that Dr. Sostre "continued" Plaintiff's Xanax prescription "without his consent" (Pltf.'s Br. Opp. County Defs.' MSJ at 32), and that Dr. Sostre should have discontinued the Xanax (*id.* at 18), Plaintiff has failed to adduce expert testimony as to the duty of care required for a physician who is continuing a prescription, *see N.J.S.A.* 2A:53A-27 (requiring experts to testify to deviation from the standard of care in malpractice actions), nor expert testimony on the claimed duty to discontinue the medication after Plaintiff's suicide attempt. Indeed, Plaintiff's expert did not object to the actions of Dr. Sostre in treating Plaintiff. (Ex. U to County Defs.' MSJ at 84:19.) Finally, Plaintiff has pointed to no injuries that occurred to him *after* Dr. Sostre saw him and continued the treatment; Plaintiff only contends he was harmed during the trial and when he attempted suicide.

Plaintiff has adduced no evidence that Dr. Sostre acted with deliberate indifference, nor that Dr. Sostre was negligent in continuing Plaintiffs Xanax prescription, nor that Dr. Sostre's conduct was in any way outrageous, nor that Dr. Sostre in any way conspired with others to engage in any unlawful activity. Accordingly, the Court grants Dr. Sostre's motion for summary judgment as to all claims.

**2) Nurses Parker and Panzer**

Against Nurse Parker, Plaintiff asserts: (1) a § 1983 claim for failing to provide medication, (2) a § 1983 claim for administering Xanax without Plaintiff's informed consent, (3) conspiracy, (4) intentional infliction of emotional distress, (5) state constitutional violations, and (6) medical malpractice. Against Nurse Panzer, he asserts: (1) a § 1983 claim for the application of alleged torture techniques, (2) a § 1983 claim for failing to provide medication, (3) a § 1983 claim for administering Xanax without Plaintiff's informed consent, (4) conspiracy, (5) intentional infliction of emotional distress, (6) state constitutional violations, and (7) medical malpractice.

**a) § 1983 and NJCRA Claims for Plaintiff's Restraint**

Plaintiff asserts this claim against Nurse Panzer arising out of his alleged restraint after the 2005 incident purportedly to coerce him to agree to provide a blood sample for testing. However, Plaintiff adduces no facts concerning Nurse Panzer's alleged role in the decision to restrain him. Indeed, Plaintiff apparently argues that at the time of his 2005 intake, "Nurse Panzer stat[ed] that Mr. Boyd did not have any need for special housing," (Pltf.'s Br. Opp. County Defs.' MSJ at 14), which is exactly what Plaintiff contends in his lawsuit. The remainder of Plaintiff's arguments about his alleged restraint during that time is directed at the guards and Nurse Guida. Because Plaintiff has not adduced facts to indicate that Nurse Panzer

did anything in violation of his rights during the 2005 incident, she is entitled to summary judgment on this claim.

**b) § 1983 and NJCRA Claims for Failing to Provide Medication**

Plaintiff asserts these claims against Nurses Parker and Panzer for allegedly failing to provide medication. As the Court explained above, Plaintiff must demonstrate deliberate indifference to his serious medical needs to prevail on this claim, and courts generally will not find deliberate indifference where some medical treatment was rendered. *See Christy*, 216 F. Supp. 2d at 413-14. Plaintiff must show that Nurses Parker and Panzer were aware of his need for medication and deliberately ignored that need. *Farmer*, 511 U.S. at 838.

As with Plaintiff's claims on this count against Dr. Hershkowitz, Plaintiff fails to adduce facts showing that the nurses acted with deliberate indifference. Instead, the facts demonstrate that each time Dr. Hershkowitz ordered a dose of Plaintiff's medication, the nursing staff delivered that medication to Plaintiff. (Pltf's 56.1 Stmt. in Support of MSJ ¶¶ 8-12; Pltf.'s Br. Opp. County Defs.' MSJ at 16-17.) In short, the nurses were made aware that Plaintiff lacked his medication and then responded by providing the medication. (*Id.*); *see* § III.B.1., *supra.* (explaining that, by necessity, courts engage in a limited review of decisions made by prison medical staff, and may not second guess the decisions of the prison medical staff).

Because Plaintiff has not adduced evidence that the nurses acted with deliberate indifference to his medical needs, the Court will grant summary judgment to Nurses Parker and Panzer on the claims arising from delays in Plaintiff's treatment.

**c) § 1983 and NJCRA Claims for Administering Xanax without Consent**

Plaintiff contends that Nurses Panzer and Parker were partially responsible for administering Xanax to him without receiving his informed consent. "To establish a violation of

this right, a prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment." *Mudey v. United States*, No. 09-1699, 2011 WL 1884796, at *4 (D.N.J. May 18, 2011) (quoting *Pabon v. Wright*, 459 F.3d 241, 246 (2d Cir. 2006)).

Plaintiff contends that Nurse Panzer initially contacted Dr. Hershkowitz from the courtroom and informed Dr. Hershkowitz of Plaintiff's anxiety, which led Dr. Hershkowitz to prescribe the Xanax.[6] Dr. Hershkowitz then dispatched Nurse Parker to provide the medication to Plaintiff in the courtroom; there are no allegations that Nurse Panzer provided the medication directly to Plaintiff. Nurse Parker has testified that the guards at the courthouse instructed her not to speak to Plaintiff. (Ex. O to County Defs.' MSJ at 36:14-23).

On these facts, Plaintiff cannot show that Nurse Panzer was deliberately indifferent in failing to obtain Plaintiff's informed consent. First, Nurse Panzer did not actually provide the medication. (Hershkowitz 56.1 Stmt. in Support of MSJ ¶ 29.) Second, as Dr. Hershkowitz and several nurses testified in their depositions, prison practice was that the nurse administering the medication would discuss the medication with an inmate. (Hershkowitz 56.1 Stmt. Opp. Boyd MSJ ¶¶ 20-21, 24.) The record demonstrates that Nurse Panzer's call to Dr. Hershkowitz arose after Plaintiff was "shaking," and that after receiving the medications, Plaintiff stated that he felt

---

[6] Plaintiff's allegation is based on Dr. Hershkowitz's affidavit, although Dr. Hershkowitz now contends that affidavit was not correct and that he does not know who called him from the courtroom. (*See* County Defs.' Moving Br. at 8 n.2.) At the summary judgment phase, the Court draws all inferences in favor of Plaintiff, the non-movant, and will assume that Plaintiff could demonstrate that Nurse Panzer placed the call.

much better and did not complain about his anxiety nor his medication for the remainder of the trial. (Hershkowitz 56.1 Stmt. in Support of MSJ ¶¶ 29, 31.)

Nor do the facts support Plaintiff's constitutional claim against Nurse Parker. She was not present at the court when Nurse Panzer spoke to Dr. Hershkowitz, and there is no indication she was privy to their discussion. Moreover, Nurse Parker has testified that she was informed not to speak to Plaintiff by the guards when she arrived at the courthouse, (Ex. O to County Defs.' MSJ at 36:14-23), and the transcript of the trial indicates she only spoke directly to the judge when he spoke to her to explain what medication she was providing to Plaintiff (Ex. Q to County Defs.' MSJ at 43:2-11). These facts do not amount to deliberate indifference to Plaintiff's right to refuse treatment. Plaintiff has not adduced evidence to show that Nurse Parker's actions were "such a substantial departure from professional judgment, practice or standards as to demonstrate that the [professional] did not base the decision on such a judgment." *White*, 897 F.2d at 113.[7]

**d) Conspiracy**

Because Plaintiff has not adduced evidence that Nurses Parker or Panzer participated in any unlawful act, or any unlawful act by lawful means, he cannot carry his burden of proof for a conspiracy claim. *See Mercedes-Benz USA*, 2010 WL 3283544, at *12 (elements of conspiracy under New Jersey law include "two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means.") The Court grants summary judgment to Defendants Parker and Panzer on this claim.

---

[7] Further, Plaintiff has not adduced evidence to show that either nurse acted outside of the professional standards for nurses prescribed by New Jersey law, which does not require nurses to receive informed consent. *See Mulholland v. Thomas Jefferson Univ. Hosp.*, No. 09-4322, 2010 WL 2926202, at *5 (D.N.J. July 20, 2010)

**e) Intentional Infliction of Emotional Distress**

Nurses Parker and Panzer are entitled to summary judgment on this count. There is no evidence they took any action remotely close to the outrageousness required to prevail on this claim—that is, that their "conduct exceeded all bounds usually tolerated by decent society and [that] the actions are especially calculated to cause and do cause mental distress of a very serious kind." *Porta*, 654 F. Supp. at 1285. As the Court has explained, Plaintiff reported that the Xanax he received was helpful (Hershkowitz 56.1 Stmt. in Support of MSJ ¶ 31), and the transcript reflected no further comments from Plaintiff concerning the medication. Moreover, every time Dr. Hershkowitz prescribed medication, the nurses provided it to Plaintiff. (*See* Section III.B.1, *supra*.) Accordingly, Defendants Parker and Panzer are entitled to summary judgment on this count.

**f) Medical Malpractice**

Plaintiff alleges medical malpractice claims against Nurses Parker and Panzer for failure to provide Plaintiff with his medications and arising out of the alleged failure to receive Plaintiff's informed consent.

Concerning informed consent, the nurses are entitled to summary judgment, because nurses have no duty under New Jersey law to obtain informed consent. *See Mulholland v. Thomas Jefferson Univ. Hosp.*, No. 09-4322, 2010 WL 2926202, at *5 (D.N.J. July 20, 2010) (noting that nurses often do not have "the requisite knowledge of a particular patient's medical history, diagnosis, or other circumstances which would enable the employee to fully disclose all pertinent information to the patient.").[8]

---

[8] Plaintiff's claims for pain and suffering are barred by the New Jersey Tort Claims Act, which only permits such damages against a public entity or employee where the plaintiff has experienced "permanent loss of a bodily function, permanent disfigurement, or dismemberment."

Plaintiff also fails to demonstrate that the nurses acted negligently when his medication was delayed. First, contemporaneous notes from Nurse Panzer indicate that the paperwork that should have accompanied Plaintiff's medication did not arrive. (Ex. M. to County Defs.' MSJ.) Second, the undisputed facts demonstrate that each time Dr. Hershkowitz prescribed medication, the nurses promptly provided that medication to Plaintiff. (*See* Pltf.'s Opp. to County Defs.' MSJ at 16-17.) In short, Plaintiff cannot demonstrate that Nurses Parker or Panzer failed to meet their duty of care in providing Plaintiff with medication.

**3) Nurse Guida**

Against Nurse Guida, who treated plaintiff following the 2005 incident, Plaintiff asserts: (1) a § 1983 claim for violation of Fourteenth Amendment rights, (2) conspiracy pursuant to state law, (3) intentional infliction of emotional distress, (4) state constitutional violations, and (5) medical malpractice.

Plaintiff contends that Nurse Guida refused to provide him treatment after he was allegedly beaten by the Guard Defendants. (Pltf.'s Opp. to County Defs.' 56.1 Stmt. ¶ 14.) Plaintiff also contends that she conspired with the guard officers and wrote in her note that he was "acting very strangely" to justify placing him in a suicide gown and restraining him. (County Defs.' 56.1 Stmt.¶ 12.) Finally, Plaintiff contends she was involved in asking him for a blood sample, and that, when he refused, he was restrained for three days and that Nurse Guida failed to have him evaluated by a psychiatrist during that time. (*See* Pltf.'s Br. Opp. County Defs.' MSJ at 14-15.)

---

N.J.S.A. 59:9-2(d). The NJTCA applies only where defendants acted in the course of their employment. *See Rodriguez v. McEady*, No. 09-5020, 2011 WL 5156111, at *6 (D.N.J. Oct. 28, 2011) (does not bar claims where the defendant acted willfully or with actual malice). Plaintiff has adduced no evidence that these defendants acted outside the scope of their employment.

Nurse Guida's note from Plaintiff's evaluation describes "two small bumps" to his head, and indicates that Plaintiff refused Tylenol and additional treatment. (County Defs.' 56.1 Stmt. ¶ 9.) Plaintiff disputes that note, and the transcript of Plaintiff's hearing the day after the altercation indicates that he "look[ed] beat up" and "like a prizefighter," and that his hand was "pretty significantly swollen." (Pltf.'s 56.1 Stmt. Opp. County Defs.' MSJ ¶ 15.) Plaintiff contends that Nurse Guida and others at the Bergen County Jail failed to x-ray his right hand despite his complaints about pain to that hand. (Pltf.'s Br. Opp. County Defs.' MSJ at 4-5.) Plaintiff later had surgery to repair his hand, although the parties dispute whether that surgery was caused in part by the altercation or was entirely related to a previous injury. (*See id.*; County Defs.' Br. in Support of MSJ at 10.)

Here, there are disputed issues of material fact as to each claim that preclude summary judgment. In particular, the parties dispute the extent of treatment Plaintiff needed after the altercation, whether Nurse Guida refused to provide care, whether Plaintiff refused treatment, whether he needed to be restrained, and whether Nurse Guida's note justifying his restraint was pretextual. Accordingly, Nurse Guida's motion for summary judgment is denied.

**4) Guard Defendants**

Plaintiff asserts claims against Defendants Russo, Pell, Sloma, and Acakios arising out of the 2005 incident, and Defendants LaPlaca, Bracero, and Dixon arising out of the 2006 incident. Specifically, Plaintiff alleges claims against those defendants for (1) § 1983 and NJCRA claims for federal and state constitutional violations, (2) state common law conspiracy claims, and (3) intentional infliction of emotional distress.

The Guard Defendants first claim that they are entitled to qualified immunity, which protects government officials performing discretionary functions from liability for civil damages

unless "the allegations state a claim of violation of clearly established law." *Thomas v. Independence Tp.*, 463 F.3d 285, 293 (3d Cir. 2006) (citations omitted). While "[d]efendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer" would have acted in the way the defendants did, officers are entitled to immunity "if officers of reasonable competence could disagree on this issue." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "When excessive force is alleged in the context of a prison disturbance, the subjective inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000) (quoting *Hudson v. McMillain*, 503 U.S. 1, 7 (1992)).

The standard for application of force by prison officers is whether the officer's actions amounted to cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). An officer's actions can be cruel and unusual even "when the inmate does not suffer serious injury." *Wlkins v. Gaddy*, 130 S.Ct. 1175, 1176 (2010) (internal quotation omitted).

**a) Defendants Russo, Pell, Sloma, and Acakios**

The facts concerning the altercations are heavily disputed by the parties. Plaintiff contends that in the 2005 altercation, Defendants Russo, Pell, and Sloma told him that he had to remove his suit during his intake at Bergen County Jail, and that he could not wear the suit to his court appearance. (Pltf.'s Br. Opp. County Defs.' MSJ at 2-3.) Plaintiff contends that when he refused to remove the suit, Defendants Russo and Sloma told him that they "heard about what happened at the courthouse," and instructed him not to "argue with our judges," and then attacked him "without warning" while he was restrained by handcuffs and shackles. (*Id.*) Plaintiff contends Defendant Russo banged his head on the concrete floor, and that Defendants Sloma and Pell kicked and punched him. (*Id.*) Later, allegedly on the orders of Defendant

Acakios, Plaintiff contends he was stripped naked and shackled with four point restraints overnight, and subsequently restrained further until he agreed to provide a blood sample. (*Id.* at 3.) Defendants contend that the altercation and subsequent restraint occurred after Plaintiff became agitated and attacked Officer Russo, and that he was placed in a suicide gown because he was "acting strangely." (County Defs.' 56.1 Stmt.¶¶ 7-12.)

Where the facts alleged by both sides are so divergent, and there is no dispositive objective evidence of intent, the resolution of the dispute will be decided by the jury.

**b) Defendants LaPlaca, Bracero, and Dixon**

Plaintiff contends that in 2006, he created a disturbance in order to inform the guards that he had not received his medications. (Pltf.'s Br. Opp. County Defs.' MSJ at 7.) He asserts that Defendants LaPlaca, Bracero, and Dixon responded by punching and kicking him, and that they failed to provide his medications. (*Id.*) Defendants contend that Plaintiff "became belligerent and aggressive," and "repeatedly kicked the door of his cell, and he spit and cursed at the officers." (County Defs.' Br. in Support of MSJ at 30-31.) Defendants state that they then placed Plaintiff "in a compliance hold." (*Id.*)

Defendants note that there is no documentation of Plaintiff having any injuries in 2006. (*Id.* at 31.) Relying on *Wilkins*, 130 S.Ct. at 1176, Plaintiff responds that it is inappropriate to "guag[e] the culpability of defendants under the Eighth Amendment" by the severity of the injuries suffered by the plaintiff. (Pltf.'s Br. Opp. County Defs.' MSJ at 26.) Plaintiff denies that he spit at any of the guards, and contends that he was merely seeking attention so that he would receive his medication. Therefore, there are disputed issues of material fact concerning whether Defendants LaPlaca, Bracero, and Dixon acted "in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm," *Hudson*, 503 U.S at 7, and the Court will deny the motion for summary judgment as to this claim.

Plaintiff's constitutional claims arising from the delay in receiving his medication are subject to the same deliberate indifference standard as his claims against medical personnel. *See* § III.B.1, *supra* (setting forth the standard pursuant to *Estelle*, 429 U.S. at 97, and its progeny). Here, the parties dispute whether Defendants LaPlaca, Bracero, and Dixon were aware that Plaintiff required medication, and whether he was in fact denied the medication. The deliberate indifference standard is a stringent one, requiring Plaintiff to demonstrate that these officers were aware of the risk of harming Plaintiff and chose to ignore that risk. *See Farmer*, 511 U.S. at 838. However, there are disputed issues of fact here that preclude summary judgment on this claim. *Cf. Neuen v. PrimeCare Medical, Inc.*, No. 09- 5090, 2011 WL 1104118, at *7 (E.D. Pa. Mar. 24, 2011) (denying summary judgment where "[plaintiff] made Defendants aware that medical care was due; [plaintiff] complained of pain and discomfort to Defendants; [and] Defendants failed to provide access to the prescribed care. . .").

## IV. CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part Dr. Hershkowitz's motion for summary judgment, will deny Plaintiff's motion for partial summary judgment, and will grant in part and deny in part County Defendants' motion for summary judgment. An appropriate order will issue.

/s/ Faith S. Hochberg__________
Hon. Faith S. Hochberg, U.S.D.J.